Good morning, Your Honors. May it please the Court, I am Ina Lipkin, representing the petitioner in this matter. This was a case that the Board of Appeals had affirmed that opinion, so the immigration judge's decision is the final agency determination. This is a case where the respondent, though he testified regarding his case, the judge denied asylum, not based on the merits of the case and without finding any sort of credibility finding, but simply because the petitioner here refused to sign a waiver of his file from the Canadian Immigration Authorities. Kagan So why was it impermissible for the immigration judge to draw an adverse credibility, adverse, a negative inference? Because you're right, I don't think there was an explicit adverse credibility determination. But why was it not appropriate to draw an adverse inference? Lipkin There were a couple of factors, Your Honor. First of all, at all times through the testimony in the record would buttress this. The petitioner never stated he filed for asylum in Canada. He simply said he was detained based on some statements at the airport interview. He adamantly stated he never filed an asylum application. Kagan But there was information in the record that there was an application filed by an individual with the same name and the same birth date as the petitioner. Lipkin But, Your Honor, again, based on the petitioner's testimony, which the IJ did not find to be incredible, so we're going to have to take it as true that he stated he did not file an application, and the fact that the government had obtained a file by a individual named Bellwinder Singh with the ubiquitous name of Singh. Kagan With the same birth date, though, counsel? Lipkin Well, Your Honor, on today's docket we have two Bellwinder Singhs. There are a billion people in India, and I would Kagan Do you think those two people have the same birth date? Lipkin I couldn't state that, Your Honor, but I'm trying to present to the court the idea that just because there was a individual with the same name and birth date does not, as the government stated in its brief at page 13, persuasively show that an asylum application was filed. More importantly, even if one was filed, although the petitioner does not concede that he filed one, even if one was filed, and even if it contained statements that were in some way inconsistent with those facts in his asylum application, that still would not be a basis to deny, based on that application alone, without hearing the petitioner's testimony, without allowing him to present testimony regarding those inconsistencies. Here the I.J. took all that away from the petitioner and denied the case without cogently explaining why, without even going so far as to state that he found the petitioner's refusal to be improbable or implausible  Kagan The I.J. did say that the reasons for not giving the consent were implausible. Actually, Your Honor, I think he stated that the phone call that he received from immigration, I don't think he even used the word implausible, but he again stated he drew negative inference from that. And then he constructed this pyramid of negative inferences dating back all the way to the actual filing of the asylum application to find that because petitioner didn't consent. Well, then everything else he must have said, that deserves a negative inference. But the petitioner said he did not sign because he was afraid the person who assisted him in leaving the country had threatened him, and he was afraid to give his name, but the name was known already. So that's why the I.J. said that was kind of implausible to say you're afraid to name a person whose name is already known. Your Honor, in this case, the petitioner was represented by counsel. He was here in the United States with counsel's assistance and with representations from the government. He felt safe here in the United States to state the name of that individual, but there were no assurances given to him that the Canadian immigration officials would in any way protect him. Now, let me ask you this. He felt safe here, you say, but if he loses his asylum application, he's not going to be able to stay here. So, obviously, the safety is quite contingent, and it's contingent upon his succeeding in his asylum application or his CAT application or whatever other application he might make. So I don't find a sense of, okay, I'm safe, I can reveal it here. Or if he's safe in the United States, well, okay, so he's safe in the United States, so he lets them have the file that will know the name that he already knows. It strikes me it just doesn't make any common sense that a reasonable fact finder can't say, you know, there's something odd going on here when he simply refuses to allow access to a file that has his name on it, his birth date on it. What's he to think except that there's something in there he doesn't want me to see? Because if it's really true that it's somebody else, well, why should he care? Your Honor, I can't explain the idiosyncrasies of the petitioner, and perhaps we all, using our common sense, could find that he had erred in failing to do so. But really the issue here is did the I.J. err in the way he rendered his opinion? If the I.J. We contend that if the I.J. had allowed the petitioner to strike that, if the I.J. had instead reviewed the merits of the claim in conjunction with whether or not he might have filed for asylum in another country, and then based on all those factors had made a cogent credibility finding stating succinctly that, well, I find that this petitioner may have filed for asylum in Canada, and because he doesn't want to give the waiver based on, you know, these other inconsistencies in his testimony, he is incredible. But the I.J. didn't do that. He didn't state one thing about the merits claim. And instead he really relied on speculation and conjecture to find that in the first instance an asylum application was filed in Canada and, two, started to suppose that perhaps that application would contain information detrimental to the petitioner's case. That's not in the record. But, you know, you've got two different explanations here in front of us as to why he didn't do it. Number one, it wasn't, you know, it was somebody else. And number two, he didn't want the name to be revealed. But, of course, if it was somebody else, the name wouldn't be there. So it wouldn't reveal the name. You've got to choose one explanation or the other. I'm also not clear on your position. Is your position that the I.J. should not have drawn an adverse inference or that having drawn an adverse position it shouldn't have been case dispositive or that having drawn an adverse inference he didn't adequately explain it? What is your position? Our position is that he did not adequately explain the negative inference and he didn't make a credibility finding based on the inference. Number two, we're arguing that he should not have drawn the inference, that that inference was based on speculation and conjecture, and that he should have looked at the merits of this claim. Additionally, even if the petitioner had filed for asylum in another country even if that case was denied, that would not be a conclusive factor in denying his asylum application in the United States. Would it have been sufficient to say I draw an adverse inference from his refusal to let us look at the file, and the adverse inference I draw is that I think there is something in there that's inconsistent with the asylum application? Would that have been enough had he done that? He almost did that. Would it have been enough if he had? No, because, again, he's relying on speculation to find that there'd be something inconsistent. He's just assuming that there's something inconsistent. But, Counselor, doesn't Petitioner have the burden of proving eligibility for asylum? He does, Your Honor, and he did so by the contents of the actual asylum application and by his testimony on the merits of the claim. And that should alone be sufficient basis, plus his background documentation in addition to supporting documents contained in Exhibit A were all sufficient cumulatively to establish asylum. If Petitioner today thinks that there is some readily available information that will establish either eligibility or non-eligibility, doesn't he have an obligation to provide that upon request as the applicant? He does have an obligation to provide all the documentation that he could provide. Or controls, or that he controls. He had control of that evidence. But he believes that doing so could pose a threat of harm to his family that still resides in India. So if we don't believe that, does he lose? I think not, because, again, he should have at the very least an opportunity to have a decision made on the merits of the claim and his application that he'd submitted here in the U.S. All right. Thank you. Okay. Now, you've run over time, but we'll hear from the government and then we'll give you a minute in rebuttal. Thank you. May it please the Court. My name is Daniel Davis from the Department of Justice. I represent Attorney General Gonzalez, Respondent in this matter. I think this case boils down to two very simple points which the immigration judge ruled in our favor, the first of which is that the immigration judge was within his discretion when he chose to make an adverse inference from petitioner's failure to sign the waiver of the Canadian immigration file. Did the IJ make an adverse credibility finding? I think you could say that there was an adverse credibility finding in this case. I don't think that's necessary for us to win. Well, let me ask it again. Not whether you could say did the IJ make an adverse credibility finding. I think he did. Or in the record. Could you point me to that adverse credibility finding? He doesn't say so in as many words, but his petitioner's case, Salam v. INS, states that as long as the immigration judge is talking about implausibility in the record, that that is sufficient for this Court to treat that as an adverse credibility finding. We're pretty clear that we require fairly clean statement by the IJ of an adverse credibility finding rather than sort of stray language that says, well, you know, this seems a little implausible. Does this satisfy the standard? I understand that language, but I would point the Court to the Salam case. Well, would you point me to the language in the IJ's order or in anything else the IJ does or says that in your mind constitutes the adverse credibility finding? Well, I think in the opinion he talks about the adverse. I've got the record here in front of me, and let's read it together. Where? I will point to. I would start on page 53 of the record. This is page 8 of the IJ's opinion. Okay. I guess I should go back a page to page 52. That's page 7 of the IJ's opinion. Okay. In the second and third paragraph, the Court's talking about the smuggler, Ramu Walia. He's talking about what? The smuggler, Ramu Walia. Right. The person who brought Petitioner into Canada and into the United States. Right. And says, you know, in the last sentence of the second paragraph, however, it appears that the caller already knew the name of this person and merely wanted to know from the respondent if the respondent knew him, and if so, whether the respondent knew where he was at the time of the call. And then the next paragraph talks about even if the Court assumes that Mr. Balwant made a threat to the well-being of the respondent's family in the early 1990s, and even assuming further that the phone call that the Court had described occurred in the year 2000 or thereabouts, the Court does not see any connection between the threat and the phone call and the respondent's refusal to sign a waiver. That's not an adverse credibility determination. And then, I understand that. But then in page 53, it talks about that, you know, the Court repeats that it does not see the connection between the execution of conclusion the Court could draw in this case is that it must make a negative inference regarding the respondent's claim to asylum. That's right. That's different than an adverse credibility determination. And that's the difficulty in this case. If the IJ had made an adverse credibility determination and supported that, it would have been different. But a negative inference is different than an adverse credibility determination. Be that as it may, if the Court decides to go down that road, I would argue in the alternative that the adverse determination, the adverse inference in and of itself and the way that it infects the rest of Petitioner's case is deficient to show that Petitioner failed to carry his burden of proving his asylum application and his other claims. Can I ask you about the Salam case that you said supports your argument that an implicit adverse credibility determination is okay? Yes. What language in that case supports the IJ's failure to make an adverse credibility determination? Because my reading of that case is that we were talking about the BIA's adverse credibility ruling, not the IJ's. So what in that case talks about the IJ's adverse credibility determination? Well, I think, Your Honor, the fact that because the Board has accepted the IJ's without elaborating on it, the IJ opinion is properly the opinion of the Board. That is not the case for Salam. The BIA made a separate opinion. I understand that in Salam there was a BIA made a separate opinion. But what I'm saying is because in this case, because the IJ opinion was affirmed by the Board without rationale and because the IJ opinion is the one that this Court is looking at to make the determination, that the same rule that would apply to the BIA, meaning the BIA talking about implausibility, would be the same kind of standard. So do you see that those are two different procedural postures? In Salam, the IJ had made an explicit adverse credibility determination. And the BIA did not make one. But we could look back to the IJ's explicit adverse credibility determination. In this case, there was not one made by the IJ or the BIA. So do you see those as two different scenarios? What I see, Your Honor, is that still the IJ has made a question of the adverse inference itself. I would argue or contend that the adverse inference itself is sufficient for the credibility finding. The adverse credibility finding that he seems not to have made. Not made explicitly. That's right. But I rely on my alternative argument that the adverse inference itself, because in a case like this, it is the burden of the Petitioner to show that he has met the requisite requirements for asylum or withholding or removal or whatever the case may be, that the adverse inference and the way that it infects the rest of Petitioner's case shows that Petitioner felt very certain. Well, if the IJ had said that, I would have no difficulty. The trouble is the IJ doesn't say, and from this inference, I now conclude that the He doesn't say that explicitly. I'm tempted to say, based on our cases, that absent an explicit adverse credibility finding by the IJ, we have to send it back. I don't think we can say, well, absent an adverse credibility finding, we believe the story, and therefore he is entitled to asylum. I think under Ventura we probably have to send it back. But why don't we have to send it back either to get an adverse credibility finding, if that's what the IJ wants to make, and then he can support it in the ordinary way, I find these inconsistencies and these difficulties and so on, or to say, well, I don't find his story incredible, I don't make an adverse credibility finding, but nonetheless, the story he tells doesn't rise to the to a sufficient level of persecution. I think, Your Honor, that the reason that that is not necessary in this case is because of the fact that there was readily available evidence that Petitioner held the key to in his hands that the Court could have looked at, and because he failed to sign the waiver, you know, this is not the case. Well, I fully understand. You may be, on that point, pushing on an open door. That is to say, I'm fully prepared to support the IJ or agree that the IJ was within his proper scope of authority to draw an adverse inference. In his position, I would have done, I think pretty much anyone would have done. My problem is that he doesn't then take the inference and say, and I therefore find this Petitioner's tale incredible. What I think the difference in this case is that this is not like an adverse credibility finding case in that, in all the cases Petitioner cites, in all the cases, in all the briefs, there is never the case where Petitioner is withholding evidence that appears to be evidence, appears to be material to the key questions in the case, and that because of the adverse inference finding, the Court has to go back to the Petitioner's burden, and because, you know, there's no, the Court has to speculate and doesn't know exactly what's in that Canadian immigration file, he has to assume, and I think he says in the opinion that because of that inference, you know, it's, it's, he has to question, you know, the events that happened. Where does he say that? I think you're referring to page 53 where he says the negative inference must extend to the time the Respondent states he's been in Canada, extends to the date that he gave date of departure, and then actually extends to the merits of the claim. Is that what you're referencing? This is where the immigration judge is explaining the extent of damage that is done because of the adverse inference. This is not a case where, you know, there's a missing birth certificate, and if you made an adverse inference with respect to the lack of a missing birth certificate, well, the impact of that would be, well, we don't know exactly when he was born. We can't be sure he was born in this country. But it's not this. This is a missing immigration file. But I understand that, and I'm reading that sentence that you quoted, which I think is the right sentence. I mean, it's the sentence that does the best work for you. Additionally, it says the IRJ, the negative inference must extend, actually, to the merits of the Respondent's claim because, indeed, the Canadian immigration file may contain information contradictory to the information that the Respondent has provided at the court on the substance of his appeal for application for asylum. He doesn't say must and he's, therefore, a liar. He says may. And it's he draws an inference. I think that's all the immigration judge can say, Your Honor, because he doesn't have the immigration file in front of him. He has to assume that because Petitioner doesn't have a, you know, hasn't given a plausible reason for withholding the immigration file. But I may be undoing punctilius and insisting on the difference between the word inference and finding. But that's where I found her in this case. Okay. I would simply argue that the immigration judge's findings or statements, however you want to characterize them, on page 53 are sufficient to show that because that immigration file may have had information relevant to the key parts of the Petitioner's asylum claim, that basically the immigration judge was hand-tied because he wasn't even if the Petitioner's testimony was consistent within itself because he didn't have access to this immigration file. Well, but if EIJ had said because he refuses to allow access to the file, I find that the story he told in this courtroom is incredible, we could then analyze it in accordance with our rules about how we analyze adverse credibility findings. And we'd say, well, then we could say, okay, well, is it a sufficiently specific reason and so on. But you just want to say it's a permissible inference, which I think it clearly is, and, therefore, we treat it as an adverse credibility finding, which I think it is not. Well, counsel, is this any different than, say, for instance, a civil case where you have a discovery issue and the discovery isn't turned over and a negative inference is drawn and the person loses on that issue because he or she hasn't sustained its burden of proof. It's a different approach. Is that your argument? I think it's very similar to the discovery case, and I would argue that it's even more powerful than the discovery case because normally in a discovery case where someone refuses to provide information, he asserts a privilege, an attorney-client privilege, a Fifth Amendment privilege. There has been no assertion of any type of a privilege in this case. Petitioner said that he didn't provide the file because he was afraid, you know, that his family would be harmed because of disclosure. He didn't invoke any Fifth Amendment or attorney-client privilege. So it is like that discovery case, but it's even stronger than the discovery case because the balance in the scale for someone withholding evidence under attorney- client privilege or Fifth Amendment privilege is not present in this case. Okay. Further questions? I have one that I just want to ask. Aren't you asking us to make a ruling that once an I.J. makes an adverse inference, it's case dispositive without further inquiry? Isn't that essentially what you're asking us to do on this case under these facts? No, I don't think we are. The I.J.'s determination on the adverse inference and the scope of impact of the birth certificate example, if Petitioner had failed to provide a birth certificate and it appeared that the birth certificate would have been readily available and the I.J. dismissed the entire case for that reason, I don't think that we would argue that that is sufficient. We could say, well, you know, the birth certificate doesn't go to the core of the asylum claim. It doesn't show that he was persecuted based on, you know, political or another factor. We are saying that because the scope of the adverse inference was sufficient to go to the heart of the Petitioner's asylum claim, that the immigration judge was within his discretion to rule that the adverse inference went that far. Now, I agree that there will be cases where an adverse inference is drawn and an immigration judge has gone beyond the reasonable scope of the adverse inference. And once again, going back to the discovery analogy, that would be a place where this court could turn to. But I don't think that a finding of adverse inference is game over for Petitioner. We also have to show that the adverse inference and the impact of the adverse inference on the case was within the immigration judge's discretion. Okay, thank you very much. I think we have your argument in hand. You didn't save a minute, but we will give you a minute. Your Honor, I just want to state one more time that here the immigration judge stated a set of negative inferences, but he never once stated that he found the case improbable or implausible. That is not in any of the pages of the decision. Had he done so, he could have directed the court to where he might have found, I don't know, an adverse credibility finding. But just peppering the opinion with negative inferences is an insufficient basis for a cogent negative credibility finding. Counsel, you want us to hold that a Petitioner can withhold evidence in an immigration hearing and it should not result in a negative inference that precludes them from meeting their burden of persuasion? Is that what you want us to hold? No, Your Honor, because I think that each case is fact-specific. And I think in this case, the merits of his assigned claim were very strong, and his refusal to sign the waiver was not something that would have gone to the heart of the claim because, again, even if we don't know. How do we know? I understand. But even if an application of Balwinder Singh, his birth date, turned out to be him with a completely different set of facts, even then, Petitioner may still have been able to explain to the court any discrepancies. But it took that opportunity away from the court by refusing to sign the consent. What if that file had in there that he tortured people as part of a he was a police officer for the government and then tortured people while he was there? Would that be a disqualifying? Probably after making a cogent credibility finding, the I.J. might find that, yes, that would be disqualifying. Would the I.J. have to make a credibility finding if there were evidence that he had tortured people? Well, I'm sure the I.J. would then apply the persecutor bar. But, Your Honors, in this case, it was the Petitioner who offered in his asylum application the fact that he had been in Canada, had traveled through Canada, was detained and released on bond in Canada. This is not a situation where he was concealing his presence in Canada. No, he was only concealing the file. Well, Your Honor, he stated his reasons why. Let me ask you this, if I may. Assuming that we were to conclude, and I don't say we are, but assuming we were to conclude that this is an insufficient record in terms of what the I.J. said to be an adverse credibility finding, is the appropriate solution for us to remand to the I.J. to allow the I.J. either to enter an adverse credibility finding and to support it or to say, well, okay, I treat the story as true, and it either does or does not rise to the appropriate level? That is what the Petitioner would ask the Court to do. Okay. Further questions? Thank you very much. Thank you. Thank you very much. The case of Balwinder Singh v. Gonzalez is now submitted for decision.
judges: W.fletcher, Rawlinson, Henderson